ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 02 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TERESA PLENGE, Ph.D., | * |
| Plaintiff, | * |
| v. | * Civil Action File No. 1:09-CV-1796-RWS |
| CHEROKEE COUNTY BOARD OF EDUCATION, | * |
| Defendant. | * JURY TRIAL DEMANDED |

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

COMES NOW Teresa Plenge, plaintiff herein, and files this, her lawsuit against the Cherokee County Board of Education, showing the Court the following:

**PARTIES**

1.

Teresa Plenge (hereinafter "plaintiff" or "Dr. Plenge"), plaintiff herein, is a resident of the State of Georgia.

2.

The Cherokee County Board of Education is the governing body of the Cherokee County School System, and is subject to the jurisdiction of this Court.

Cherokee County Board of Education may be served with process by serving its attorney, Ernest Linwood Gunn at Roach, Caudill & Gunn, LLP, 111 West Main Street, Canton, GA 30114.

## JURISDICTION

3.

Jurisdiction in this case exists pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Venue is proper in this court pursuant to 28 U.S.C. §1391(b).

## FACTS

4.

Theresa Plenge is a speech language pathologist employed by the Cherokee County School System from 2002 to present, although she has not received compensation since she took leave of absence on December 15, 2008. She has a PhD from Georgia State University, majoring in learning disabilities. She has a master's degree from the University of Tennessee in speech language pathology. She has a BA from the University of Tennessee in speech language pathology. She has multiple Georgia educator certificates in learning disabilities (P-12), consultative in SP ED Language Arts Cognitive Level (P-12) and in SP ED Social

Science Cognitive Level (P-12). She is also certified in speech and language pathology (P-12).

5.

Dr. Plenge suffers from a number of birth defects, scoliosis and spinal degeneration. She is confined to a wheelchair and is disabled within the meaning of the Americans With Disabilities Act ("ADA").

6.

Prior to her leave of absence, Dr Plenge was a qualified person with a disability within the meaning of the ADA.

7.

As Dr. Plenge has grown older, her spinal degeneration has become more and more severe.

8.

In February, 2007, Dr. Plenge notified the Cherokee County School District that her condition had escalated and that she felt that she might need some accommodations pursuant to the ADA, including but not limited to an "80% position." Defendant responded to the request by instructing Plaintiff largely that absences would be handled under the Family Medical Leave Act ("FMLA") and/or

short term disability leave. Plaintiff was told the ADA did not apply since her conditions were medical illnesses, not disabilities.

9.

In May, 2007 Plaintiff made an additional request for accommodations based on further medical documentation, including but not limited to a "60% position." The request was again denied and Plaintiff was told she would need to "job share" in her position.

10.

In the July to September 2007 timeframe, Dr. Plenge made repeated requests for accommodations, asking among other things for a 60% position while providing medical information supporting her claim that she was disabled within the meaning of the ADA. She was told that the matter would be handled under FMLA. Even though the School District's Supervisor of Staffing approved a 60% position for Plaintiff, Julie Little, Director, Risk Management/Safety Employee Benefits, refused to acknowledge the approval and refused to approve the proposed accommodation.

11.

From September 2007 through May 2008, Plaintiff experienced numerous instances of harassment related to absences from her 100% position based on

medical needs. Ms. Little asked Plaintiff's doctors to fraudulently complete and backdate a Request for Medical Leave of Absence form. Plaintiff was accused of taking prescription drugs that she should not take at work. The School District asked Plaintiff's doctors for a Fitness for Duty form.

12.

In July 2008 Plaintiff made repeated requests for accommodation under the ADA which were ignored.

13.

On August 14 and 19, 2008 Plaintiff was subjected to employee disciplinary meetings in which she was reprimanded for requesting to meet with Director of Personnel Trey Olson about proposed ADA accommodations.

14.

On August 22, 2008 Plaintiff filed internal complaints of harassment, retaliation, discrimination and intimidation under the ADA and Georgia Whistleblower's Act.

15.

From August 22 to September 22, 2008 Plaintiff was repeatedly harassed and retaliated against, received a letter of reprimand, received orders to perform

tasks she could not perform and was required to cancel a physical therapy appointment.

16.

In September, 2008, due to her disability, Dr. Plenge was required to start using a power wheelchair. On September 4, 2008 she reported to the school district that she needed such a chair by providing it with a letter finding it was medically necessary. The school responded by denying that she had a disability and ignored her medical documentation demonstrating that she did.

17.

On or about September 11, 2008, the day that her chair was to arrive, a meeting was scheduled with school district officials. Dr. Plenge was informed that the school district would accommodate the chair, but that they would not bring the buildings in which she worked or their access points up to ADA Guidelines.

18.

From September 11, 2008 through December 15, 2008, Title II Accessibility Building Code violations existed in and around all the buildings Dr. Plenge needed access in order to perform her job. Only a few isolated, situation-specific accommodations were made to allow Dr. Plenge's wheelchair to get into the buildings.

19.

On October 14, 2008, Dr. Plenge was seriously injured when she was following an administrative directive from the Assistant principal of Teasley Middle School to meet with a group of teachers in classroom trailers that were not wheelchair accessible. The areas in and around the trailers were not in compliance with ADA, Title II Accessibility Building Codes.

20.

Dr. Plenge went out on workers' compensation leave. While Dr. Plenge was out on workers' compensation-related leave, she was instructed to complete certain assignments via a computer. Mrs. McCarthy demanded that Dr. Plenge meet certain deadlines for completion of work, verbally reprimanded her by phone for not returning emails and for not completing the assigned work, and demanded medical proof that she was not able to work at a computer. Dr. Plenge was reprimanded for not reporting to work on a date listed on the Northside Hospital, Cherokee emergency room discharge form that had been provided to the school.

21.

On December 1, 2008, upon returning to work from her worker's compensation leave, Dr. Plenge discovered that Trey Olsen, Assistant Superintendent for Human Resources, had filled her position without notifying her

while she was on leave. He told staff members that she was out on long term disability leave and would not return to work. When Dr. Plenge asked to meet with someone to discuss why this was done, her requests were refused. Two part-time people were hired to fill her position and were told they would continue to work in that position indefinitely. When Dr. Plenge asked to meet with someone to discuss continuing to work now that her position was being filled by three people, she was not allowed to meet with anyone. She was told that the district's attorney and human resources department were discussing her situation and that they would be in touch once they had made their "final" decision.

22.

On December 3, 2008, McCarthy again directed Dr. Plenge to meet with teachers in the trailer community, which was not wheel chair accessible under the ADA.

23.

On December 5, 2008, Susan McCarthy, an assistant principal, engaged in a loud verbal reprimand against Dr. Plenge, labeling her "tone of voice" as insubordinate. She verbally reprimanded Dr. Plenge in the school lobby in front of parents, students, faculty and staff members while accusing her of not being able to do her job because of her disabilities.

24.

On December 7, 2008, Dr. Plenge had an office visit with her primary care physician. Her blood pressure was so high her doctor sent her to an emergency room. The next day she was sent back to the emergency room due to high blood pressure. The high blood pressure was the result of her hostile work environment. Her physician told her she could not return to work until her blood pressure returned to normal. Dr. Plenge took leave on December 15, 2008 and has remained on leave without pay since that time.

25.

On or about December 20, 2008, Dr. Plenge filed an EEOC charge as well as an internal complaint of discrimination. The individual she complained about in her complaint "investigated" her complaint and found that he and the School District were without fault.

## COUNT I
## VIOLATION OF AMERICANS WITH DISABILITIES ACT

26.

Plaintiff realleges and incorporates by reference all of the preceding paragraphs of this Complaint.

27.

Plaintiff is a qualified individual with a disability with a record of physical impairment that substantially limits several major life activities, including but not limited to walking.

28.

Plaintiff repeatedly requested reasonable accommodations for her disability but defendant refused.

29.

The actions of defendants in refusing to accommodate plaintiff were in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*.

30.

As a direct and proximate result of Defendants' conduct, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT II
## RETALIATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT

31.

Plaintiff realleges and incorporates by reference all of the preceding paragraphs of this Complaint.

32.

Plaintiff engaged in protected speech in repeatedly asking for accommodations for her disability.

33.

Defendant's actions were retaliatory and prohibited by the Americans With Disabilities Act, 42 U.S.C. §12101, *et seq.*

34.

As a direct and proximate result of defendant's retaliation, plaintiff has suffered economic damages, humiliation, and emotional and mental distress.

35.

The plaintiff is entitled to an award of back pay and benefits, reinstatement and/or front pay, attorney's fees, compensatory damages, and all other appropriate damages, remedies, and relief available under the ADA, as requested in Plaintiff's Prayer for Relief.

### COUNT III
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### PUBLIC ACCOMODATION

36.

Plaintiff incorporates herein by reference the preceding allegations as if fully set forth herein.

37.

Plaintiff is a qualified individual with a disability with a record of physical impairment that substantially limits a number of major life activities, including but not limited to walking.

38.

Many of the facilities of the school district were not reasonably available to plaintiff. Some were dangerous for her to navigate.

39.

Plaintiff complained about the inaccessibility of these facilities and sought a reasonable accommodation. Defendant refused.

40.

Plaintiff's requests for a reasonable accommodation were denied and she was forced to continue to navigate the school district facilities without accommodation to her disability.

41.

Plaintiff's work areas were not compliant with the ADA.

42.

Defendants violated Title II of the ADA. As a consequence, plaintiff has suffered damages.

## COUNT IV
## VIOLATION OF THE FMLA
## (INTERFERENCE AND RETALIATION)

43.

Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

44.

29 U.S.C. § 2615 (a) (1) states that: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

45.

Defendant denied Dr. Plenge's rights under the FMLA and thereby violated her rights under the FMLA.

46.

By refusing to return Dr. Plenge to a comparable position when she was ready and able to return to work, Defendants interfered with Dr. Plenge's rights under the FMLA and retaliated against her for exercising her rights under the FMLA.

47.

Defendants' actions damaged Dr. Plenge in an amount to be proven at trial.

48.

Accordingly, Dr. Plenge is entitled to an award of back pay, reinstatement or front pay, liquidated damages, attorneys' fees, costs, and all other appropriate damages, remedies, and other relief available under the FMLA.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Plenge prays as follows:

Plaintiff Teresa Plenge requests that the Court:

1. Adjudicate and declare that Defendant has violated the rights of Plaintiff under the federal statutes listed above;

2. Award Plaintiff appropriate back pay, including reimbursement for lost pay and benefits in an amount to be shown at trial;

3. Award Plaintiff liquidated damages under the FMLA;

4. Award Plaintiff pre-judgment interest as required by law;

5. Reinstate Plaintiff to her former position with Defendant prior to her demotion and constructive discharge, or in the alternative, award front pay to compensate Plaintiff for lost future wages, benefits, and pension;

6. Award Plaintiff compensatory damages for the emotional pain she suffered as a result of defendant's refusal to accommodate her and as a result of her demotion and constructive discharge;

7. Award Plaintiff punitive damages;

8. Award Plaintiff her expenses for this litigation including attorney's fees, expert witness fees, costs and disbursements; and

9. Grant such additional relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully submitted,

BUCKLEY AND KLEIN, LLP

By: _____
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@buckleyklein.com

Atlantic Center Plaza, Suite 1100
1180 West Peachtree Street, NW
Atlanta, GA 30309
Telephone: (404) 781-1100
Facsimile: (404) 781-1101